Filed 10/27/25  Seiden v. CMS Construction CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LEWIS SEIDEN,<br><br>    Cross-complainant and Appellant,<br><br>    v.<br><br>CMS CONSTRUCTION, INC. et al.,<br><br>    Cross-defendants and Respondents. | B334424 consolidated with B334642<br><br>(Los Angeles County Super. Ct. No. 20STCV17928) |

APPEALS from a judgment and orders of the Superior Court of Los Angeles County, William Fahey, Judge.  Affirmed in part and dismissed in part.

Kowal Law Group, Timothy M. Kowal, Teddy T. Davis, and Ryan Merker for Cross-complainant and Appellant.

Wolfe & Wyman and Libby Wong for Cross-defendant and Respondent CMS Construction, Inc.

Lewitt, Hackman, Shapiro, Marshall & Harlan, Jessica W. Rosen and Nicholas S. Kanter for Cross-defendants and Respondents KGM3 LLC, Craig Steven Den Besten, and Randi Den Besten.

––––––––––––––––––––––

## INTRODUCTION

The trial court dismissed appellant Lewis Seiden's second amended cross-complaint with prejudice as a terminating sanction for his repeated discovery misconduct. The court later denied Seiden's motion to vacate the dismissal under Code of Civil Procedure[1] section 473, subdivision (b) (section 473(b)). Seiden now appeals. We conclude the court did not abuse its discretion in imposing terminating sanctions given the breadth of Seiden's misconduct. We also disagree with Seiden's contention that section 473(b) mandated the court vacate its dismissal because Seiden's attorney submitted a declaration accepting the blame for the imposition of terminating sanctions. The fault for the discovery misconduct that led to terminating sanctions occurred when Seiden was representing himself and belonged to him alone; it was not the fault of the attorney he retained at the eleventh hour as the court considered the consequences of that misconduct.

–––––––––––––––

[1] Unspecified statutory references are to the Code of Civil Procedure.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Seiden's Commercial Landlord Sues Him and Seiden Cross-complains against KGM3

Seiden sells and leases cars. He leased office space from Bogota Corporation (Bogota) to operate his business. In 2019, in connection with its contemplated sale of the property to respondent KGM3 LLC (KGM3), Bogota requested that Seiden execute a tenant estoppel certificate.[2] Seiden refused. Bogota consummated the sale anyway, and in May 2020 it sued Seiden, alleging among other things that Seiden had wrongfully refused to execute the estoppel certificate unless Bogota compensated him for meritless claims, which needlessly forced Bogota to place money in escrow as security for those claims.

On October 26, 2020, Seiden, represented by counsel, filed a cross-complaint against KGM3, which had consummated the purchase from Bogota and assumed the lease to Seiden. Seiden claimed KGM3 had breached the lease by, among other things, failing to adequately maintain the property, prohibiting him from using the common area water spigot, and failing to make promised improvements. Seiden sought a rebate of rent and compensation for an alleged decrease in his business income.

---

[2] "Estoppel certificates inform prospective buyers and lenders of the lessees' understanding of a lease agreement. By providing independent verification of the presence or absence of any side deals, estoppel certificates prevent unwelcome post-transaction surprises that might adversely affect the building's income stream . . . ." (*Robert T. Miner, M.D., Inc. v. Tustin Ave. Investors* (2004) 116 Cal.App.4th 264, 273.)

3

**B.     Seiden Begins Representing Himself and Adds CMS and the Den Bestens as Cross-defendants**

On September 10, 2021, Seiden's counsel substituted out of the case and Seiden began to represent himself.

On November 10, 2021, Seiden filed a first amended cross-complaint; on August 17, 2022, he filed a second amended cross-complaint. Seiden alleged that KGM3 interfered with his use of the property by continuing Bogota's breaches and breaching the lease in new ways, including by barring Seiden from various areas of the property. Seiden also asserted cross-claims against respondent CMS Construction, Inc. (CMS), another tenant in the building, and the principals of KGM3 and CMS, respondents Craig Steven Den Besten and Randi Den Besten. He alleged he suffered personal injury, and his business was harmed, after CMS and Craig Steven Den Besten altered a sewer line access causing noxious gas to enter Seiden's office space.

After the trial court granted respondents' demurrers in part, Seiden proceeded on various cross-claims against respondents to recover for alleged business losses and personal injury.

**C.     KGM3's and CMS's Motions to Compel and Seiden's Supplemental Responses**

On June 7, 2022, CMS moved to compel production of documents in response to its first set of requests, asserting that Seiden had failed to make a "code compliant" production of documents. Seiden filed a written opposition that did not dispute the inadequacy of his document production but argued the court should deny the motion on procedural grounds.

On December 27, 2022, KGM3 moved to compel supplemental responses to its first set of special interrogatories.

4

KGM3 contended that Seiden had interposed meritless objections and improperly invoked section 2030.230 to refer to voluminous documents instead of providing responsive information, while also failing to specify where in the referenced documents responsive information could be found.[3] Seiden filed an opposition, which did not contest the merits of KGM3's arguments and instead argued only that KGM3's motion was procedurally defective.

On February 7, 2023, the trial court granted CMS's and KGM3's motions, ordering within 15 days that Seiden was to produce all documents responsive to CMS's requests and to respond to KGM3's special interrogatories; the court also granted KGM3 $2,625 in sanctions. The court concluded that Seiden's objections to the interrogatories "[we]re meritless[ and] improperly vague," his responses improperly invoked section 2030.230 to refer to documents instead of providing responsive facts, and in any event the responses failed to specify with sufficient detail the documents Seiden claimed would provide responsive information.

---

[3] Under section 2030.230, "If the answer to an interrogatory would necessitate the preparation or the making of a compilation, abstract, audit, or summary of or from the documents of the party to whom the interrogatory is directed, and if the burden or expense of preparing or making it would be substantially the same for the party propounding the interrogatory as for the responding party, it is a sufficient answer to that interrogatory to refer to this section and to specify the writings from which the answer may be derived or ascertained. . . ."

On February 22, 2023, Seiden provided to CMS a spreadsheet which purported to link documents he had previously produced to specific document requests. On February 23, 2023, CMS's counsel responded that the spreadsheet was "incomprehensible" and did not comply with the court's February 7, 2023 order; counsel later further indicated the spreadsheet was not new but part of the prior inadequate production, and linked documents were not responsive to CMS's requests. On February 28, 2023, after the 15-day deadline had elapsed, Seiden served supplemental responses to CMS's document requests. In the supplemental responses, Seiden stated that "[s]ome of the documents requested are reports which were unable to be generated by the production date due [to] a failure of [his] hard drive" and that he had "brought the [computer] to a computer repair facility which was unable to recover the data."

On March 3, 2023, Seiden untimely served further responses to KGM3's special interrogatories. In response to interrogatories seeking facts and documents supporting his claim of reduced car sales, Seiden stated "[the i]nterrogatory cannot be answered completely at this time because doing so requires access to data that is unavailable at present," and claimed that he had lost data due to a "failed hard drive" and would have to "manually rebuild the lost data files." He stated that he would "further supplement th[e] [r]esponse" "[a]s files are rebuilt."

**D.     Respondents File Motions for Terminating Sanctions**

On May 15, 2023, KGM3 and the Den Bestens filed a motion under section 2023.030 for terminating sanctions, or alternatively, evidentiary and issue sanctions, along with monetary sanctions due to Seiden's alleged misuse of the

6

discovery process.[4]  The discovery misuse alleged by KGM3 and the Den Bestens went well beyond Seiden simply failing to comply with the court's February 7, 2023 order on the motions to compel.

KGM3 and the Den Bestens primarily focused on Seiden's repeated failure to provide responsive information substantiating his claim of lost business income.  They asserted Seiden was evasive at his September 19, 2022 deposition, for example stating he "would have to check" whether he had sold more than two cars in 2022, refusing to identify the business records where the information could be found, and claiming to not know how much revenue his business received in the years 2019 through 2022 including refusing to provide an estimate.  Then, after KGM3 successfully moved to compel Seiden to provide further responses to its first set of special interrogatories (many of which related to his claim of lost business income), his further responses continued to be evasive and reasserted objections the court had already found lacked merit.  In addition, Craig Steven Den Besten propounded interrogatories on Seiden regarding the number of cars Seiden had sold or leased during 2019-2022, medical treatment he had received for the alleged exposure to sewer gases, and the basis for his claims he had been damaged by alleged breaches of the lease and the implied covenant of quiet

---

[4] KGM3 had filed a sanctions motion on March 29, 2023, but filed a new motion on the same grounds after the hearing date on its original motion was changed several times and the case was twice transferred to new judges.

enjoyment, but Seiden only interposed objections and failed to provide any substantive responses.[5]

KGM3 and the Den Bestens also questioned the bona fides of Seiden's claims that he had lost responsive information due to a computer problem and argued in the alternative that if Seiden had in fact lost responsive information then he had "permitted the spoliation of evidence." They adduced evidence Seiden had stated in response to a later interrogatory that to rebuild his lost data files he "intend[ed] to aggregate writings on purchase orders and other documents with any electronic data available" but refused to respond to KGM3's interrogatory asking him to specifically identify those written documents, which suggested he was withholding responsive information. KGM3 and the Den Bestens lastly contended that terminating sanctions were warranted because the court had already imposed monetary sanctions on Seiden but his discovery abuse continued.

CMS filed its own motion for terminating sanctions on May 16, 2023.[6] CMS asserted that Seiden had failed to produce the documents required by the trial court's February 7, 2023 order, and instead provided an "incomprehensible" spreadsheet that failed to tie any produced documents to specific document requests and in any event omitted six of the document requests entirely. CMS also contended that Seiden served supplemental written responses which included "evasive and non-responsive

---

[5] As noted below, Craig Steven Den Besten filed a motion to compel responses to these interrogatories.

[6] Similar to KGM3, CMS had filed a sanctions motion on March 29, 2023, but filed a new motion on the same grounds after the case was transferred.

objections." CMS argued that terminating sanctions were appropriate because neither monetary sanctions nor orders compelling discovery had been effective. In addition, CMS asserted that terminating sanctions were warranted because Seiden had spoliated evidence by allowing digital information related to his sales to be " 'lost.' "

## E.  Respondents Also File Additional Motions to Compel

In addition to the sanctions motion from KGM3 and the Den Bestens, KGM3 moved to compel Seiden to respond to its interrogatory seeking to identify the documents Seiden planned to use to rebuild his data files and Craig Steven Den Besten moved to compel Seiden to respond to Den Besten's first set of special interrogatories.

In addition to its sanctions motion, CMS separately moved to compel Seiden to respond to its further discovery requests regarding Seiden's claim that he lost data due to a computer problem. CMS contended that Seiden responded to the discovery only with meritless objections, including objecting to the special interrogatories and requests for admission on the sole ground they were not supported by declarations attesting to the need for more than 35 requests when in fact there were such declarations.

## F.  The Trial Court Grants the Motions for Terminating Sanctions and Motions to Compel after Seiden Fails to File Written Opposition

The hearing on respondents' sanctions motions and the motions to compel was scheduled for June 14, 2023, which made Seiden's oppositions due June 1, 2023. Seiden did not file any opposition. On June 7, 2023, respondents served and filed notices of Seiden's failure to oppose the motions.

9

That same day, attorney Travis A. Corder substituted into the case to represent Seiden. On June 13, 2023, Corder attempted to file an ex parte application to continue the hearing on the motions, but the application was rejected by the court clerk because Corder missed the 10:00 a.m. filing deadline.[7]

Later on June 13, the trial court advanced the hearing date and granted the sanctions motions and motions to compel without holding a hearing. The court's minute order stated that the motions were "well-taken, unopposed and granted in their entirety." The court dismissed Seiden's second amended cross-complaint with prejudice.[8]

## G. Seiden Files a Motion to Vacate which the Trial Court Denies

On July 11, 2023, Seiden filed a motion under section 473(b) to vacate the trial court's June 13 order on the sanctions motions.[9] As relevant here, Seiden contended he was entitled to

---

[7] Seiden later adduced evidence that the filing was delayed because the filing service Corder used unexpectedly did not recognize his password, requiring him to expend time to change his password.

[8] The trial court also imposed monetary sanctions which we affirmed in a separate appeal. (*Bogota Corporation v. Seiden* (Nov. 22, 2024, B332296) [nonpub. opn.].)

[9] "Section 473[(b)] provides two separate provisions for relief from default or dismissal. [Citation.] 'One affords discretionary relief, and the other makes relief mandatory.' [Citation.]" (*Hernandez v. FCA US LLC* (2020) 50 Cal.App.5th 329, 335.) Seiden contended in his motion to vacate that he was entitled to both mandatory and discretionary relief under section

relief because his attorney, Corder, submitted a declaration accepting blame for failing to file oppositions to the sanctions motions or an ex parte application to continue the hearing. In his declaration, Corder averred that Seiden retained him on May 24, 2023, and he advised Seiden at that time he "would likely not be able to file oppositions to the [eight] [m]otions by [the June 1 due date]" and intended to ask opposing counsel to stipulate to a continuance and, if they did not agree, to seek a continuance from the court. Corder further averred that opposing counsel did not agree to a continuance and then detailed his failed effort to file an ex parte application on June 13, 2023. Corder identified as his "failures" not preparing and timely filing oppositions to the sanctions motions, not filing the ex parte application before the last day, not preparing oppositions by the day before the hearing and seeking a continuance with the oppositions ready, and failing in his attempt to file the ex parte application on June 13, 2023. He took no responsibility for Seiden's discovery misconduct or the failure to remedy it by providing code compliant responses; Corder implicitly acknowledged the responses to date were deficient, stating he was working with Seiden "to further supplement his discovery responses where appropriate" and "to locate and produce any additional responsive documents." Corder averred that, other than his inability to file the ex parte application on June 13, his failures were the result of his having too much other work and suffering from a medical condition

473(b). However, Seiden does not pursue his claim for discretionary relief on appeal and we therefore do not discuss it further.

11

which impacted, among other things, his "cognition," "concentration" and "decision-making."

Attached to Corder's declaration was a copy of the ex parte application to continue the June 14, 2023 hearing he had attempted to file on June 13. The section 473(b) motion did not include proposed oppositions to any of the pending motions, proposed discovery responses, or any other proposed pleading beyond the ex parte application to continue. (See § 473(b) [the "[a]pplication for . . . relief shall be accompanied by a copy of the . . . pleading proposed to be filed therein, otherwise the application shall not be granted"]; *Rodriguez v. Brill* (2015) 234 Cal.App.4th 715, 729 [in the context of terminating sanctions, § 473(b) "require[s] the application for relief to be accompanied by verified discovery responses"].)

In their joint opposition, respondents contended that Seiden, not his attorney, was responsible for the sanctions motions being granted because Seiden was the one who engaged in discovery abuse. Respondents asserted that the trial court granted the sanctions motions because it found them to have merit, not because they were unopposed, and further asserted that Seiden was to blame for the lack of opposition because he delayed in retaining an attorney. In addition, relying on the requirement that a party seeking relief under section 473(b) must attach a copy of the pleading they propose to file, respondents argued that Seiden's motion failed because he had not attached compliant discovery responses.

In his reply brief, Seiden contended that the court might not have granted the sanctions motions if he had gotten a continuance and could have prepared oppositions. In response to respondents' argument that he was required to submit discovery

12

responses with his motion to vacate, Seiden pointed out he had already provided "facts and argument supportive of [his] defenses [to the sanctions motions]" in a declaration by Corder and in the motion to vacate, and suggested that tendering proposed oppositions one to two weeks after the hearing "could . . . constitute substantial compliance" with the requirement to attach a proposed pleading.

The court held a hearing on the motion to vacate on August 11, 2023 and took the matter under submission. The court denied the motion on August 17, 2023. It concluded that "Seiden [wa]s not entitled to mandatory relief as to the dismissal of the [second amended cross-complaint]. The motions for terminating sanctions were well-taken and Seiden failed to file oppositions by the due date. Corder was not counsel of record until a later date. In other words, nothing Corder did or did not do caused the [m]otion for [t]erminating [s]anctions to be granted." The court further found, "[i]t was also Seiden's fault, and not Corder's, that no oppositions were filed to the discovery motions." The court also stated, "Seiden concedes that the [m]otion [to vacate] did not include proper discovery responses. But this is followed by a strained and unpersuasive 'substantial compliance' argument . . . ."

The court found that "Seiden ha[d] engaged in a long pattern and practice of misconduct in this case. Seiden improperly delayed years in filing his [first amended cross-complaint] and then [his second amended cross-complaint]. He provided evasive and incomplete answers in his deposition. He failed to provide substantive responses to interrogatories and failed to produce documents. After meet and confer efforts, Seiden refused to supplement his answers, requiring cross-

13

defendants to file motions to compel." The court stated, "In sum, this is one of those rare cases where a party has demonstrated that he is incapable of or unwilling to comply with the basic requirements of civil litigation and discovery."

After the court entered a judgment of dismissal, Seiden timely appealed the judgment and the trial court's order denying his motion to vacate.[10]

## DISCUSSION

Seiden contends the trial court erred in imposing terminating sanctions because Seiden did not violate any court

---

[10] Seiden also appealed an October 6, 2023 order granting KGM3's motion for contractual attorney's fees. In that order, the trial court found that KGM3 had incurred $121,884 in reasonable attorney's fees, but made a deduction to avoid "a double recovery of attorney[']s fees because the [c]ourt previously awarded fees as discovery sanctions." As KGM3 concedes, it is evident the court intended to deduct the portion of the prior fee awards Seiden had already paid ($2,625) but instead mistakenly deducted the unpaid balance of those prior awards ($11,362) to arrive at its final award of $110,522, an error that benefitted Seiden. The court later included that amount ($110,522) in an amended judgment which no party has appealed.

Seiden contended in his opening brief that the court's October 6, 2023 order was error because it left him "obligated to pay" a portion of KGM3's attorney's fees "twice" under both the October 6, 2023 order and the prior fee awards. Seiden abandoned his appeal of the October 6, 2023 order in his reply brief, based on respondents' concession (with which we concur) "that the trial court intended to incorporate the amount of unpaid discovery sanctions in the judgment," such that respondents can no longer enforce collection of any attorney fee amount beyond what is included in the amended judgment.

14

order nor engage in conduct that would justify terminating sanctions, and because the court failed to consider less drastic sanctions. Seiden also contends the court erred in denying his motion to vacate because Corder's declaration accepting blame for the sanctions motions being granted entitled him to relief.

## A. The Terminating Sanctions

### 1. *Standard of Review*

" 'We review the trial court's order [imposing terminating sanctions] under the abuse of discretion standard and resolve all evidentiary conflicts most favorably to the trial court's ruling. We will reverse only if the trial court's order was arbitrary, capricious, or whimsical. It is [the] appellant's burden to affirmatively demonstrate error and where the evidence is in conflict, we will affirm the trial court's findings. [Citation.] We presume the trial court's order was correct and indulge all presumptions and intendments in its favor on matters as to which it is silent.' " (*Creed 21 v. City of Wildomar* (2017) 18 Cal.App.5th 690, 702.)

### 2. *Legal Principles Governing Discovery Sanctions*

A court may impose sanctions, including a terminating sanction ordering dismissal of the action, for "misuse of the discovery process." (§ 2023.030, subd. (d)(1).) "Misuses of the discovery process include . . . [¶] . . . [¶] . . . [f]ailing to respond or to submit to an authorized method of discovery[,] [¶] . . . [m]aking, without substantial justification, an unmeritorious objection to discovery[,] [¶] . . . [m]aking an evasive response to discovery[,] [¶] . . . [d]isobeying a court order to provide discovery[, and] [¶] . . . opposing, unsuccessfully and without

15

substantial justification, a motion to compel . . . discovery." (§ 2023.010, subds. (d)-(h).)

In addition, the Civil Discovery Act authorizes sanctions, including terminating sanctions, when parties fail to obey an order compelling their responses to specific types of discovery. (E.g., §§ 2030.300, subd. (e) ["[i]f a party . . . fails to obey an order compelling further response to interrogatories, the court may make those orders that are just, including the imposition of an issue sanction, an evidence sanction, or a terminating sanction"], 2031.320, subd. (c) ["if a party . . . fails to obey an order compelling inspection, copying, testing, or sampling, the court may make those orders that are just, including the imposition of an issue sanction, an evidence sanction, or a terminating sanction"].)

"The discovery statutes evince an incremental approach to discovery sanctions, starting with monetary sanctions and ending with the ultimate sanction of termination. . . . [Citation.] If a lesser sanction fails to curb misuse, a greater sanction is warranted: continuing misuses of the discovery process warrant incrementally harsher sanctions until the sanction is reached that will curb the abuse." (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 992.) "The trial court has broad discretion in selecting discovery sanctions, subject to reversal only for abuse. [Citations.] The trial court should consider both the conduct being sanctioned and its effect on the party seeking discovery and, in choosing a sanction, should ' "attempt[] to tailor the sanction to the harm caused by the withheld discovery." ' [Citation.] The trial court cannot impose sanctions for misuse of the discovery process as a punishment." (*Ibid.*)

16

3.  *The Trial Court Did Not Abuse its Discretion in Imposing Terminating Sanctions*

a.  <u>The trial court was statutorily empowered to impose terminating sanctions based on Seiden's pattern of discovery abuse.</u>

Seiden contends the trial court could only issue terminating sanctions if he violated an order compelling discovery, and that he did not violate any such court order. Both of these premises are mistaken.

Certain code provisions do require the disobedience of an order compelling discovery before imposition of a terminating sanction pursuant to that provision. (E.g., §§ 2030.300, subd. (e), 2031.320, subd. (c); see generally *New Albertsons, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1423-1424.) But not all. Trial courts are authorized to impose sanctions, including terminating sanctions, for a party's pattern of misuse of the discovery process untethered to any order on a motion to compel. (§ 2023.030, subd. (d); *City of Los Angeles v. PricewaterhouseCoopers, LLP* (2024) 17 Cal.5th 46, 74-75.)

Section 2023.010 defines misuses of the discovery process, including numerous examples of such misuse unrelated to defying an order following a motion to compel. Section 2023.030 permits a court to impose sanctions, up to and including dismissing an action, for misuses of the discovery process as set forth in section 2023.010. (*City of Los Angeles v. PricewaterhouseCoopers, LLP*, *supra*, 17 Cal.5th at pp. 67-72.) However, "[a] court may invoke its independent authority to impose sanctions under sections 2023.010 and 2023.030 only when confronted with an unusual form of discovery abuse, or a pattern of abuse, not already addressed by a relevant sanctions

17

provision." (*City of Los Angeles v. PricewaterhouseCoopers, LLP, supra*, at p. 74.)

The trial court found such an unusual pattern of abuse here, concluding "this is one of those rare cases where a party has demonstrated that he is incapable of or unwilling to comply with the basic requirements of civil litigation and discovery." Substantial evidence supports the court's conclusion that Seiden had engaged in a pattern of discovery misuse sufficiently egregious for terminating sanctions, including "[f]ailing to respond" to discovery (§ 2023.010, subd. (d)), "[m]aking, without substantial justification, an unmeritorious objection to discovery" (*id*., subd. (e)), "[m]aking an evasive response to discovery" (*id*., subd. (f)), "[d]isobeying a court order to provide discovery" (*id*., subd. (g)), and "opposing, unsuccessfully and without substantial justification, a motion to compel . . . discovery" (*id*., subd. (h)).

Seiden failed to produce documents in response to CMS's document requests. When CMS moved to compel, Seiden's opposition did not dispute he had failed to respond nor claim he had a legitimate excuse for not doing so, and instead asserted only that CMS's motion failed on procedural grounds which the court later rejected. Seiden initially responded to KGM3's first set of special interrogatories by trying to hide the requested needles inside a haystack of irrelevant information, improperly invoking section 2030.230 to refer to documents instead of providing responsive information and referring to voluminous documents without specifying where responsive information could be found. When KGM3 moved to compel, Seiden again failed to provide any substantial justification for his actions and relied instead on flawed procedural arguments. At his deposition, Seiden refused to provide information and reasonable

18

estimates about his business's revenue, refused to identify the business records where the information could be found, and interposed meritless objections.

Seiden's evasive conduct continued after the trial court granted KGM3's and CMS's initial motions to compel. Despite being ordered to produce documents to CMS, Seiden failed to produce any documents and instead provided CMS with a spreadsheet purporting to identify responsive documents but which the court could reasonably conclude was incomplete and meant to confuse. Despite being ordered to respond to KGM3's first set of special interrogatories, Seiden served responses devoid of responsive facts, and relied on an excuse—that he had lost information through a "failed hard drive"—which the trial court could reasonably conclude was not genuine. Seiden had initially responded to the interrogatories by referring to documents independent of any hard drive, and not mentioning any responsive documents on a hard drive. Then, when pressed about the lack of relevant information in the identified documents, Seiden claimed for the first time the actual responsive information was elsewhere, on a now-failed hard drive. When questioned about that excuse, he adopted a third story that he had yet other information (which he refused to identify or produce) from which he could reconstruct what was allegedly on the hard drive.

Seiden's misuses of the discovery process were not limited to his claim for business losses but also included his other claims for damages from alleged toxic gas exposure, breaches of the lease, and breaches of the implied covenant of quiet enjoyment. Seiden relied on objections which the trial court could conclude

19

were meritless to avoid responding to interrogatories propounded by Craig Steven Den Besten regarding these other claims.

> b. Substantial evidence supports the trial court's implied finding that lesser sanctions would not be effective.

Seiden also contends the trial court abused its discretion because it did not consider whether a sanction less drastic than dismissal of his action would have sufficed. " 'A decision to order terminating sanctions should not be made lightly. But where a violation is willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction.' " (*Doppes v. Bentley Motors, Inc., supra*, 174 Cal.App.4th at p. 992, fn. omitted; see *Collisson & Kaplan v. Hartunian* (1994) 21 Cal.App.4th 1611, 1620 [" '[T]he question before this court is not whether the trial court should have imposed a lesser sanction; rather, the question is whether the trial court abused its discretion by imposing the sanction it chose' "].)

Although the court's order did not expressly state that it considered and rejected lesser sanctions, we presume the court made an implied finding that less severe sanctions would not curb Seiden's discovery abuse if substantial evidence supports such a finding. " '[E]ven where there are no express findings, we must review the trial court's exercise of discretion based on *implied findings* that are supported by substantial evidence.' " (*Agnone v. Agnone* (2025) 111 Cal.App.5th 758, 767 [review of order imposing discovery sanctions].)

The trial court's implied finding that lesser sanctions would not be effective to compel Seiden's compliance with his discovery

20

obligations is supported by substantial evidence.  First, the court's February 7, 2023 order, compelling compliance and imposing monetary sanctions, had failed to curb Seiden's discovery abuse.  As discussed above, Seiden's pattern of discovery abuse continued after the court's order in his further responses to the discovery subject to the order as well as several of respondents' additional discovery requests.

Second, substantial evidence supports the trial court's implied finding that evidence or issue sanctions would not adequately ameliorate the harm caused by Seiden's failure to provide information and identify documents to support his claims.  Evidentiary or issue sanctions are usually more appropriate than terminating sanctions where it is "unlikely [that] the responsive information [sought by the discovery] would relate to at least some of the core issues at trial" such that lesser sanctions can be crafted "to replace the information that would or could be included" in the discovery not produced.  (*Lopez v. Watchtower Bible & Tract Society of New York, Inc.* (2016) 246 Cal.App.4th 566, 605-606; see also *Caryl Richards, Inc. v. Superior Court* (1961) 188 Cal.App.2d 300, 305 [terminating sanctions improper for the defendant's failure to adequately respond to a single interrogatory, which could have been effectively ameliorated by an issue or evidence sanction regarding the topic of the interrogatory].)  Here, however, Seiden repeatedly evaded discovery going to the very heart of his claims that his business had suffered due to respondents' conduct, that emissions from the sewer outlet CMS had worked on had harmed his health and business, and that he could recover damages under the lease and the implied covenant of quiet enjoyment.  (See *Miranda v. 21st Century Ins. Co.* (2004) 117 Cal.App.4th 913, 929 [rejecting

21

the plaintiff's argument that the trial court should have imposed an issue sanction instead of terminating sanctions in part because the only possibly appropriate issue sanction would be "equivalent to a dismissal of [the] plaintiff's claim"].)

Seiden relies on *Lopez v. Watchtower Bible & Tract Society of New York, Inc., supra*, 246 Cal.App.4th 566, but in that case the lower court imposed the terminating sanction before attempting to gain compliance with monetary sanctions and there was "no basis in the record showing the [lower] court could not have obtained [the defendant]'s compliance with lesser sanctions." (*Id.* at p. 605.) In contrast here, the orders compelling Seiden to respond to discovery and monetary sanctions failed to achieve his compliance. In addition, in *Lopez* the defendant suggested specific monetary, evidentiary, and issue sanctions the lower court could have imposed (*id.* at p. 605 [identifying alternatives such as a "monetary penalty for every day [the offending party] did not search for the documents or for each day the responsive documents were not produced" or "evidentiary or issue sanctions to replace the information that would or could be included within th[e requested] documents"]), while in this case Seiden fails to identify any lesser sanctions that would be effective.[11] Lastly, in *Lopez*, there were "core

_____

[11] Indeed, Seiden fails to explain how evidentiary or issue sanctions would have produced any different result here. The "lesser" alternative sanction proposed by respondents was to prohibit Seiden from introducing at trial any evidence of damages. If Seiden's discovery abuses were to preclude him from presenting evidence that he suffered business losses, damage from alleged toxic gas exposure, or damage from alleged breaches of the lease and the covenant of quiet enjoyment, or if the court

22

issues . . . unaffected" by the contested discovery (*id.* at p. 606); here, as noted, Seiden's discovery abuses related to the key issues underlying his claims of business loss and personal injury.

**B.    The Motion to Vacate**

Seiden contends the trial court erred in denying his motion to vacate the dismissal of his second amended cross-complaint because he was entitled to relief based on the declaration of his counsel, Corder, accepting blame for the dismissal.

1.    *Legal Principles Governing Motions to Vacate under Section 473(b) and Standard of Review*

Seiden's appeal challenges only the denial of mandatory relief under section 473(b). Under that provision, "the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (§ 473(b).)

---

had imposed an issue sanction that Seiden could not show such damage, the outcome of this case would be exactly the same because such a sanction would be equivalent to dismissing Seiden's claims given the necessity to demonstrate damages. (See *Miranda v. 21st Century Ins. Co.*, *supra*, 117 Cal.App.4th at p. 929.)

" 'When a default [or dismissal] is the attorney's fault the court must grant a timely noticed motion for relief. The only limitation is when the court finds [that] the default [or dismissal] was not in fact the attorney's fault, for example when the attorney is simply covering up for the client. . . .' [Citation.] Thus, '[t]he court must also find that the default [or dismissal] was actually caused by the attorney's mistake, inadvertence, surprise or neglect. . . .' " (*Todd v. Thrifty Corp.* (1995) 34 Cal.App.4th 986, 991.)

The phrase " 'in proper form' " as used in the mandatory relief provision incorporates the requirement, as stated in the discretionary relief provision, that the motion " 'shall be accompanied by a copy of the answer or other pleading proposed to be filed.' " (*Carmel, Ltd. v. Tavoussi* (2009) 175 Cal.App.4th 393, 401.) Courts "interpret the requirement in section 473(b) that an application for mandatory relief be 'in proper form' to mean that, when relief is sought from a terminating sanction imposed for failing to provide discovery responses, the application must be accompanied by verified responses to the discovery in question. . . . [This] avoid[s] further delays by compelling the delinquent party to demonstrate a readiness to proceed on the merits." (*Rodriguez v. Brill, supra*, 234 Cal.App.4th at p.729, citing *Carmel, Ltd. v. Tavoussi, supra*, 175 Cal.App.4th at pp. 401-402.)

" '[I]f the prerequisites for the application of the mandatory provision of section 473[(b)] exist, the trial court does not have discretion to refuse relief.' " (*Carmel, Ltd. v. Tavoussi, supra*, 175 Cal.App.4th at p. 399.) We defer to the court's factual findings, so that "[w]hen . . . 'the evidence gives rise to conflicting reasonable inferences, one of which supports the findings of the

24

trial court, the trial court's finding is conclusive on appeal.' " (*Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613, 623.)

### 2. *The Trial Court Did Not Err in Denying Seiden's Motion to Vacate*

The trial court denied Seiden's motion under section 473(b)'s mandatory relief provision based on two factual grounds. Both findings are supported by substantial evidence and therefore are conclusive, and each independently supports the court's denial of relief.

First, the court concluded that nothing Corder did or failed to do caused the sanctions motions to be granted. Seiden contends that Corder was at fault because he was retained on May 24, 2023, before the oppositions to the sanctions motions were due, and he was the one responsible for filing the oppositions. We question whether failure to oppose the motions at issue here even qualifies for relief under section 473(b), as the statute does not apply "to every 'omission' or 'failure' in the course of an action that might be characterized as a 'default' under the more general meaning of the word" (*English v. IKON Business Solutions, Inc.* (2001) 94 Cal.App.4th 130, 143), but instead only to a default entered when a defendant fails to answer a complaint and to dismissals which are procedurally equivalent to such a default. (E.g., *Hossain v. Hossain* (2007) 157 Cal.App.4th 454 [§ 473(b) does not apply to failure to timely oppose motion to enforce settlement]; *English v. IKON Business Solutions, Inc.*, *supra*, at p. 149 [§ 473(b) does not apply to failure to oppose summary judgment motion].) The dismissal here was not entered solely as a result of the failure to file an opposition to the sanctions motions in the way a default is entered if no answer

25

is filed.  It was entered because Seiden (and not his attorney) had previously engaged in a repeated pattern of discovery abuse.

Even so, assuming section 473(b) encompassed the failure to oppose the sanctions motions, the court reasonably inferred that Corder was not at fault for failing to file the oppositions, and that instead it was Seiden's fault because he delayed in retaining Corder until it was too late.[12]  In his declaration, Corder averred that when Seiden retained him, he advised Seiden that he "would likely not be able to file oppositions to the [eight m]otions by June 1 and that [he] intended, rather, to first attempt to obtain additional time by stipulation of the parties and, failing that, to apply ex parte for a continuance of the [m]otions . . . ."  Based on this, the court could reasonably infer that Seiden retained Corder with the understanding that Corder was *not* going to prepare oppositions to the motions by June 1 because there was not enough time for Corder to do so.[13]

---

[12] Seiden asserts "the trial court placed undue importance on the fact that . . . Corder had not formally entered an appearance in the case until June 7[, 2023]."  We disagree.  The court acknowledged in its order that Corder averred he was retained on May 24, 2023, and expressly found, "[i]t was . . . Seiden's fault, and not Corder's, that no oppositions were filed to the discovery motions."

[13] In his reply brief, Seiden for the first time argues that Corder was at fault for failing to "timely" request a continuance of the hearing on the sanctions motions from opposing counsel and for failing to file an ex parte application to continue the hearing.  Seiden has forfeited these claims by failing to include them in his opening brief.  (See *Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11 ["Obvious reasons of fairness

26

Second, the court found that the motion to vacate was not accompanied by a proposed pleading, as required by section 473(b).  Seiden contends he substantially complied with the requirement to attach a pleading by presenting in his motion to vacate arguments against the sanctions motions.  In its order, the court found that Seiden's " 'substantial compliance' " claim lacked merit.[14]  We agree.

"The purpose of the proposed pleading requirement of section 473 is to compel the delinquent party to demonstrate his or her good faith and readiness to proceed on the merits" and because of this purpose "courts have held substantial compliance to be sufficient." (*Carmel, Ltd. v. Tavoussi, supra*, 175 Cal.App.4th at pp. 401, 402.)  "A test for substantial compliance is whether the moving party has demonstrated a willingness and ability to comply with the procedural requirements that led to the

---

militate against consideration of an issue raised initially in the reply brief of an appellant"].)  Furthermore, even were we to consider these claims and read section 473(b) to encompass them, we would reject them because the trial court could have reasonably concluded that opposing counsel would not have stipulated to a continuance even if Corder had made the request earlier and that the court would not have granted a continuance had Corder applied for one ex parte.  At the hearing on the motion to vacate, the court noted that Seiden's earlier (April 2023) ex parte application for a continuance of the hearing date had been denied and "there was nothing [in the motion to vacate] to show that a renewed ex parte [application] should have been granted or would have been granted."

[14] Given this statement in the court's order, we reject Seiden's contention that the trial court did not base its decision on the lack of a proposed pleading.

dismissal." (*Rodriguez v. Brill, supra,* 234 Cal.App.4th at p. 729 ["In the context of a terminating sanction for failing to provide discovery, we conclude substantial compliance is demonstrated if, at or before the hearing on the motion for relief, the moving party has served a copy of verified discovery responses on opposing counsel"].) Seiden did not provide discovery responses, nor did he even commit to providing them by a given date. He instead sought additional delay to prepare and file oppositions to the motions, requesting the court continue the hearing for 45 to 60 days, "with [the] opposition deadlines to be keyed to that new hearing date." Although Seiden's motion to vacate and supporting documents discussed some reasons why he believed the sanctions motions were flawed, they did so in a general and conclusory fashion, failed to address most of respondents' arguments, and failed to provide any supporting documentary evidence to refute respondents' claims of discovery abuse. Under these circumstances, the court could reasonably conclude that Seiden was seeking "just more delays" and had not "demonstrated a willingness and ability to comply with the procedural requirements that led to the dismissal" (*id.* at p. 729).[15]

---

[15] Seiden relies on *Austin v. Los Angeles Unified School District* (2016) 244 Cal.App.4th 918, where the court held that the plaintiff, who sought to vacate a court order so that she could file an opposition, substantially complied with the proposed pleading requirement by setting forth "the same factual contentions and legal arguments . . . in her various filings requesting relief from the judgment" that she would have included in the opposition. (*Id.* at p. 933.) *Austin,* which involved discretionary relief under section 473(b), is inapposite. The

28

## DISPOSITION

The judgment of dismissal and order denying the motion to vacate are affirmed.  The appeal from the October 6, 2023 fee order is dismissed as moot.  Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED


WEINGART, J.


We concur:


ROTHSCHILD, P. J.


M. KIM, J.

---

policies behind the proposed pleading requirement, such as " ' "avoiding unnecessary and prejudicial delay," ' " "apply with even greater force when mandatory relief is being sought.  Under the discretionary provisions of section 473[(b)], a trial court may consider whether attorneys or their clients are abusing the rules or causing needless delay in deciding whether to grant relief.  Because relief under the mandatory provision must be granted when the requisites of the statute are met, a trial court would have little or no ability to curb abuses if a proposed [pleading] were not required." (*Carmel, Ltd. v. Tavoussi, supra*, 175 Cal.App.4th at pp. 401-402.)